## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JEFFREY P. SEMON, | : | |
| LINDA LEEVER, and | : | |
| WILLIAM JACOT, | : | |
| Plaintiffs, | : | Civil Action No. 3:14-cv-01593 |
| | : | |
| v. | : | (Judge Kosik) |
| | : | |
| MAPS INDEED, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM

Before the Court are InSequence, Inc.'s ("InSequence") and James Filla's, Third Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (Doc. 33); Jeffrey DeAnthony's Motion to Dismiss for Failure to State a Claim (Doc. 36); and Victor DeAnthony and MapsIndeed, Inc.'s ("MID") Motion to Dismiss for Failure to State a Claim, and in the Alternative, for a More Definite Statement Under Rule 12(e) (Doc. 37). For the reasons which follow, the Court will grant in part, and deny in part, Defendants' motions to dismiss.

### I. PROCEDURAL HISTORY

On August 13, 2014, Plaintiffs filed their original Complaint (Doc. 1). Plaintiffs amended their Complaint (Doc. 21), and ultimately filed a Second Amended Complaint (Doc. 32), on December 10, 2014. Defendants then filed their respective motions to dismiss, and the parties fully briefed the motions. Thus, the motions are ripe for disposition.

### II. FACTUAL BACKGROUND

The facts, read in the light most favorable to the Plaintiffs, are as follows. The parties in

this action include, Plaintiffs, Mr. Semon, Ms. Leever, and Mr. Jacot.  (Doc. 32, Second Am. Compl., at ¶ 15.)  Plaintiffs invested money in MID.  (Id.)  Defendant MID is a registered Virginia corporation.  (Id. at ¶ 9.)  Defendant InSequence is a Virginia corporation and is capable of receiving service in Missouri.[1]  InSequence is the dominant shareholder of MID.  (Id. at ¶ 67.) Defendant Victor DeAnthony was, or is, the president and chief executive officer of MID and also the principal systems engineer and executive director at InSequence.  (Id. at ¶¶ 10, 65.) Defendant Jeffrey DeAnthony was or is the chief marketing officer at MID and the director of business development at InSequence (Id. at ¶¶ 11, 64.) Defendant James Filla "was/is the chief technology officer at MID, was/is a director and principal of MID, and is the president and CEO of InSequence."  (Id. at ¶ 13.)

During the time of the alleged fraud, Plaintiffs alleged that Defendants operated MID out of the Herndon, Virginia corporation offices of InSequence.  (Id. at ¶ 58.)  Additionally, Jeffrey DeAnthony operated out of the InSequence office in Forty Fort, Pennsylvania.  (Id. at ¶ 63.)

In or around late 2010, Jeffrey and Victor DeAnthony made investment pitches to Ms. Leever and stated that MID was a subsidiary, affiliate, and/or sister company of InSequence.  (Id. at ¶¶ 16-19.)  Jeffrey and Victor DeAnthony directed Ms. Leever to InSequence's website to review descriptions of services, technology, clients and the successes of InSequence, who was described as MID's parent company.  (Id. at ¶20.)  Ms. Leever was encouraged to recruit friends and family to also invest with MID, and she shared the purported investment opportunity with Plaintiffs, Mr. Jacot and Mr. Semon.  (Id. at ¶¶ 22-23.)  In late 2010, Jeffrey and Victor

---

[1] In the Second Amended Complaint, Plaintiffs alleged that InSequence is a Missouri corporation.  From the parties' briefs, it appears that the parties concede that InSequence is incorporated in Virginia and is capable of receiving service in Missouri.

DeAnthony, during a series of phone conversations, declared to Ms. Leever and Mr. Semon, that MID was a risk-free investment, that InSequence was guaranteeing the success of MID, that MID was receiving legislative and financial support from members of Congress, and that MID would soon be acquired by one of several, specifically identified companies, such as LexisNexis Group, Inc. and Xerox Corporation Ltd.  (Id. at ¶ 25.)

In January of 2011, Ms. Leever and Mr. Jacot both invested an initial total sum of $100,000, in reliance on the promises and warranties conveyed by Jeffrey and Victor DeAnthony. (Id. at ¶ 26.)  In May of 2011, Ms. Leever and Mr. Semon separately met with Jeffrey DeAnthony and two others who held themselves out as associated with InSequence.  (Id. at ¶¶ 27, 29.) During the meetings, Jeffrey DeAnthony provided Ms. Leever and Mr. Semon with alleged fraudulent estimations of MID's expected revenue and growth.  (Id. at ¶¶ 28, 30.)  Jeffrey DeAnthony also provided Ms. Leever with several assurances that included naming former Pennsylvania Governor Tom Ridge and Steve Case, a founder of America Online, as members of the Board of Directors of MID, and that pending federal legislation would soon make it mandatory for all states to use the services patented by MID.  (Id. at ¶¶ 28, 30.)

In or around September 2011, Mr. Semon invested $100,000 in MID, in reliance on Defendants' promises, warranties, and projections.  (Id. at ¶ 33.)  Then in January 2012, after Jeffrey and Victor DeAnthony told Plaintiffs that MID needed fresh capital, Ms. Leever and Mr. Jacot invested an additional $100,000 in MID.  (Id. at ¶¶ 34-37.)  Also in January 2012, Mr. Semon invested an additional $80,000.  (Id. at ¶ 38.)

Between January 2012 and January 2014, Defendants provided Plaintiffs with periodic updates about the status of their investments and the anticipated profits and returns on those

investments.  (Id. at  ¶ 39.)  Defendants told Plaintiffs that they collectively, owned one million

shares of MID, and that such shares maintained a market value between $2.00 and $24.00 per

share.  (Id. at ¶ 41.)

In or around November of 2013, Plaintiffs became suspicious of Defendants and their

claims about MID.  (Id. at ¶¶ 42-44.)  Also during this time, Plaintiffs requested that Jeffrey and

Victor DeAnthony provide Plaintiffs with statements and written reports concerning the

condition of MID.  (Id. at ¶ 45.)  The DeAnthonys failed to provide such statements.  (Id. at ¶

46.)

Somewhere between February and March of 2014, Victor DeAnthony confessed to

Plaintiffs during a phone conversation, that no pending federal legislation existed.  (Id. at ¶ 48.)

By March of 2014, Plaintiffs began to demand Defendants return the $380,000 they invested with

MID, but Defendants did not return any portion of the money.  (Id. at ¶¶ 49-50.)  Plaintiffs

alleged that Defendants depleted the assets of MID for the benefit of the individual Defendants,

and that based on at least one financial statement, Defendants misappropriated Plaintiffs' money

to fund Defendants' bloated salaries and lavish lifestyles.  (Id. at ¶¶ 56-57.)

### III.  Standard of Review

Defendant Filla files his motion to dismiss for lack of personal jurisdiction under Rule

12(b)(2) of the Federal Rules of Civil Procedure, and alternatively, for failure to state a claim

under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendants InSequence, Victor

DeAnthony, Jeffrey DeAnthony, and MID, file their motions to dismiss under Rule 12(b)(6).  In

the alternative, Defendants MID and Victor DeAnthony file a motion for a more definite

statement under Rule 12(e).

4

In considering a motion to dismiss under both Rule 12(b)(2) and Rule 12(b)(6), the court must accept all allegations in the complaint as true, and view all factual disputes in favor of the plaintiff.  Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002).  Unlike a 12(b)(6) motion, which is limited to the pleadings, when ruling on a Rule 12(b)(2) motion, a court may review affidavits and other evidence submitted by the parties, since it "requires resolution of factual issues outside of the pleadings."  Corr. Medical Care, Inc. v. Gray, 07-2840, 2008 WL 248977, *5 (E.D. Pa. Jan. 30, 2008) (quoting Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66-67 n. 9 (3d Cir. 1984)).  Once a defendant raises a Rule 12(b)(2) defense, the burden shifts to the plaintiff to "prov[e] by affidavits or other competent evidence that jurisdiction is proper."  Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009) (quoting Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996)).  When no evidentiary hearing on the jurisdictional issue has been held, "the plaintiff need only demonstrate a prima facie case of personal jurisdiction at the preliminary stages of litigation."  Id.  (citing O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007)).  "The plaintiff meets this burden and presents a prima facie case for the exercise of personal jurisdiction by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'"  Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting Provident Nat. Bank v. Cal. Fed. Sav. & Loan Assoc., 819 F.2d 434, 437 (3d Cir. 1987)).

A motion under Rule 12(b)(6) allows the defendant to raise the defense that the plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must set forth a claim for relief, which contains a short and plain statement of the claim, showing that the pleader is entitled to relief.

The complaint must provide the defendant with fair notice of the claim.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The issue in a motion to dismiss is whether the plaintiff should be entitled to offer evidence to support the claim, not whether the plaintiff will ultimately prevail.  See Phillips v. Cnty. of Allegheny, 515 F. 3d 224, 232 (3d Cir. 2008) (the Rule 8 pleading standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."); Nami v. Fauver, 82 F. 3d 63, 65 (3d Cir. 1996).

The onus is on the plaintiff to provide a well-drafted complaint that alleges factual support for its claims.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (alteration in original and internal citations omitted).  The court need not accept unsupported inferences, Cal. Pub. Employees Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), nor legal conclusions cast as factual allegations, Twombly, 550 U.S. at 556.  Legal conclusions without factual support are not entitled to the assumption of truth.  See Ashcroft v. Iqbal, 556 U.S. 662, 677-679 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not" satisfy the requirements of Rule 8).

Once the court winnows the conclusory allegations from those allegations supported by fact, which it accepts as true, the court must engage in a common sense review of the claim to determine whether it is plausible.  This is a context-specific task, for which the court should be guided by its judicial experience.  The court must dismiss the complaint if it fails to allege enough facts "to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 677

6

(quoting <u>Twombly</u>, 550 U.S. at 570).  A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 677.

## IV.  DISCUSSION

We will first address Defendant Filla's motion to dismiss under Rule 12(b)(2), since "[w]here a court is asked to rule on a combination of Rule 12 defenses, it should pass on the jurisdictional issues first."  <u>Sneberger v. BTI Americas, Inc.</u>, No. CIV. A. 98-932, 1998 WL 826992, *1 (E.D. Pa. Nov. 30, 1998) (quoting <u>Friedman v. Israel Labour Party</u>, 957 F. Supp. 701, 706 (E.D. Pa. 1997)).  The Court must consider evidence that the parties have submitted outside of the pleadings.  Plaintiffs have the burden of demonstrating a *prima facie* case of personal jurisdiction, <u>Metcalfe</u>, 566 F.3d at 330, by "establishing with reasonable particularity[,] sufficient contacts between the defendant and the forum state."  <u>Farino</u>, 960 F.2d at 1223 (quoting <u>Provident Nat'l. Bank</u>, 819 F.2d at 437).  We will then discuss the remaining motions to dismiss by Count.

## A.  Filla's Rule 12(b)(2) Motion

Filla argues that the Court does not have general or specific personal jurisdiction and that the fiduciary shield doctrine applies.  Plaintiffs argue that Filla's role as a board member of MID, and the fact that exceptions to the fiduciary shield doctrine do not apply, gives this Court personal jurisdiction over Filla.  Plaintiffs also argue that the Court has jurisdiction over Filla, because Filla intentionally aimed his harmful activities at residents in the forum state.

When the defendant raises a jurisdictional defense, the plaintiff must make a *prima facie* case of jurisdiction, by showing "that the cause of action arose from the defendant's forum-related activities (specific jurisdiction), or that the defendant has 'continuous and systematic'

7

contacts with the forum state (general jurisdiction)."  Mellon Bank (East) PSFS, N.A. v.

DiVeronica Bros., Inc., 983 F.2d 551, 554 (3d Cir. 1993).  The plaintiff must sustain its burden

of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence.

A federal court in Pennsylvania has jurisdiction over parties, to the extent Pennsylvania's

long-arm statute permits.  Pennsylvania's long-arm statute authorizes jurisdiction, "to the fullest

extent allowed under the Constitution of the United States and may be based on the most

minimum contact with this Commonwealth allowed under the Constitution of the United States."

42 Pa.C.S.A. § 5322(b).  The due process clause of the Fourteenth Amendment of the United

States Constitution, requires that the defendant have minimum contacts with the forum state and

that the exercise of jurisdiction "comport[s] with fair play and substantial justice."  Remick v.

Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 316

(1945)).  "[M]inimum contacts must have a basis in 'some act by which the defendant

purposefully avails itself of the privilege of conducting activities within the forum State, thus

invoking the benefits and protections of its laws.'" Asahi Metal Indus. Co., Ltd. v. Super. Ct. of

Cal., 480 U.S. 102, 109 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475

(1985)).

## 1.  General Jurisdiction

The Court first considers whether it has general jurisdiction over Defendant Filla.  Filla

declares that he is a lifelong Missouri resident, he does not own any property in Pennsylvania, he

has not solicited or transacted any business in Pennsylvania on his own behalf, he has not directly

derived any income or revenue from any sources located in Pennsylvania, and he has only visited

Pennsylvania once in the last 15 years for a personal matter.  (Doc. 46, Filla Decl., at ¶¶ 4, 6, 10-

8

11.)  Filla declares that he does not maintain or operate any business offices or facilities in

Pennsylvania, and that at all times relevant to Plaintiffs' claims, he only used business facilities

leased by InSequence in Virginia and Missouri.  (Id. at ¶ 4.)

A court has general jurisdiction over a defendant when the defendant possesses

"continuous and systematic contacts with the forum[,]" regardless of the "claim's relationship to

the defendants' in-forum contacts."  In re Chocolate Confectionary Antitrust Litig., 602 F. Supp.

2d at 565.  It is the Plaintiffs' burden to establish personal jurisdiction after a defendant raises a

jurisdictional defense.

Plaintiffs assert that the Court has general jurisdiction over Filla because of his business

contacts with Pennsylvania, namely those of his agents and the companies he controls.  Plaintiffs

argue that employing an agent in a forum is enough to establish general jurisdiction.  Filla

responds by arguing that the Court may not exercise general jurisdiction based solely on Filla's

corporate title, and that Victor and Jeffrey DeAnthony were employed by the corporations, not by

Mr. Filla.

Plaintiffs do not present any evidence of continuous and systematic contacts with

Pennsylvania by Filla, in a personal or official capacity.  Plaintiffs do not come forward with any

evidence supporting its assertions that Filla's involvement, when on the board of MID, was the

type of involvement that would confer personal jurisdiction over him.  There is no evidence that

the quality of his contacts with Pennsylvania were significant or that he participated in tortious

conduct.  We find that Plaintiffs have not established a *prima facie* showing of general

jurisdiction over Defendant Filla.

**2. Specific Jurisdiction**

A court has specific jurisdiction over a defendant if the plaintiff establishes "with reasonable particularity sufficient contacts between the defendant and the forum state," and the exercise of jurisdiction comports with fair play and substantial justice. See Doe v. Hesketh, 15 F. Supp. 3d 586, 592-93 (E.D. Pa. 2014) (citing Provident Nat'l Bank, 819 F.2d at 437, and O'Connor, 496 F.3d at 317).  Minimum contacts may be satisfied under either the "traditional test," or the "effects test."  See Marten v. Godwin, 499 F.3d 290, 296-97 (3d Cir. 2007).

We first consider the "effects test" to determine whether we have specific jurisdiction over Defendant Filla.  "Under the 'effects' test, a court has personal jurisdiction if the plaintiff can show '(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum . . . ; [and] (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.'" Hesketh, 15 F. Supp 3d at 593 (quoting IMO Indus, Inc. V. Kiekert AG, 155 F.3d 254, 265-66 (3d Cir. 1998)). The "expressly aimed" element is the threshold requirement that must first be met before the Court considers the other two elements.  Marten, 499 F.3d at 297.  To meet this exacting standard, the plaintiff must show that "the defendant knew that the plaintiff would suffer the brunt of the harm . . . in the forum and [must] point to a specific activity indicating that the defendant expressly aimed [his] tortious conduct at the forum."  Hesketh, 15 F. Supp. 3d at 593 (quoting IMO Indus., 155 F.3d at 266).

Defendant Filla argues that the Court does not have personal jurisdiction over him under the "effects test," because Plaintiffs have conceded that none of the alleged tortious conduct was personally committed by Filla, therefore the tortious conduct exception to the fiduciary shield

10

doctrine is inapplicable.  In response, Plaintiffs assert that the Court has personal jurisdiction

over Filla because he, through his agents and companies, aimed his tortious conduct at

Pennsylvania.

We note that "jurisdiction is proper when 'the contacts proximately result from actions by

the defendant himself that create a "substantial connection" with the forum state,' not from

attenuated contacts or the unilateral activity of someone else."  Hesketh, at 597 (quoting Burger

King, 471 U.S. at 475).  We find that Plaintiffs have not demonstrated that Defendant Filla

"'manifest[ed] behavior intentionally targeted at and focused on' the forum."  Marten, 499 F.3d

at 298 (3d Cir. 2007) (quoting IMO Indus., 155 F.3d at 265).  The only allegations about Filla

concern his alleged failure to monitor and oversee the operations in Pennsylvania by Victor and

Jeffrey DeAnthony.  (Doc. 32, Pl.'s Second Am. Compl., ¶¶ 69-76.)  Plaintiffs do not show that

Filla expressly aimed tortious conduct at Pennsylvania.  Therefore, we do not have personal

jurisdiction over Defendant Filla under the "effects test."

We next consider the purposeful availment doctrine, which allows a court to exercise

jurisdiction if "(1) the defendant purposefully directs its activities into a forum, (2) the case arises

from those activities, and (3) the exercise of jurisdiction 'comport[s] with fair play and

substantial justice.'"  In re Chocolate Confectionary Antitrust Litig., 602 F. Supp. 2d at 557

(citing O'Connor, 496 F.3d at 317) (internal quotations omitted).  In an attempt to meet their

burden, Plaintiffs must counter Filla's affidavit with "contrary *evidence* in support of purposeful

availment jurisdiction."  Id. at 559-60.

Defendant Filla, a Missouri resident for his entire life, submits an affidavit with his

motion to dismiss (Doc. 35, Decl. of Filla).  Filla declares that he became president of

InSequence, on June 12, 2013, and has worked for InSequence in its St. Louis, Missouri office at all times relevant to Plaintiffs' claims.  (Id. at ¶ 1.)

As to his role with Defendant MID, Filla declares that when MID was formed in 2010, he was named its initial Executive Vice President, which did not include day-to-day operational responsibilities or actual business duties.  (Id. at ¶ 13.)  Filla also declares that he served as a member of the Board of Directors of MID until July 3, 2013, and that his role within MID was limited to consulting on occasional business and profitability matters.  (Id. at ¶ 12.)  Filla also states that he may have briefly served in the titular role of Chief Technology Officer, whose duties did not entail any involvement with MID's daily business operations.  (Id. at ¶ 13.)

Filla further declares that he has never met or communicated with any of the Plaintiffs. (Id. at ¶ 14.)  Filla states that to his recollection, he had no involvement in, or knowledge of, the alleged misstatements made by the DeAnthonys, particularly paragraphs 17, 23, 26, 28, 29, 33, and 34, of Plaintiffs' Second Amended Complaint.  (Id. at ¶ 16.)

Plaintiffs offer an affidavit from Mr. Rodgers (Doc. 43, Appendix, Ex. A, Rodgers Decl.), the managing member of Northeast Revenue Services, LLC.  In it, Mr. Rodgers does not make any statements concerning Filla's direct role with the allegations, either in his corporate or personal capacity.  Mr. Rodgers does declare that he and/or Northeast Revenue Services were approached in Pennsylvania, by Defendants Jeffrey and Victor DeAnthony and Frank Sepco, who represented themselves to be employees of MID and also agents or employees of InSequence. (Id. at ¶¶ 3-4.)  Mr. Rodgers also declares that it was represented to him that MID was operating out of the offices of InSequence.  (Id. at ¶ 6.)

Plaintiffs' argument for personal jurisdiction lies on the basis that Filla is a corporate

director of MID and that Victor and Jeffrey DeAnthony acted as Filla's agents.  Plaintiffs argue

that the fiduciary shield doctrine does not apply because of the allegations of tortious activity.

Plaintiffs also assert that, since Filla was a corporate director of MID and is president and CEO

of InSequence, he may be personally liable under the Securities Exchange Act of 1934 and the

Pennsylvania Securities Exchange Act; therefore, we should exercise personal jurisdiction over

him.  (Citing Rochez Brothers, Inc. v. Rhoades, 527 F.2d 880, 883 (3d Cir. 1975)).

Filla responds by arguing that Rochez Brothers does not support Plaintiffs' assertion,

because the court did not discuss personal jurisdiction, and it considered the opposite scenario:

the fraud of an officer imputed to the corporation.  We agree with Defendant Filla.  The facts of

the entire record and the declaration of Mr. Rodgers, do not establish a *prima facie* showing of

personal jurisdiction.  Plaintiffs do not offer any evidence that Filla, in his corporate capacity as a

board member of MID, or in his personal capacity, purposefully directed activities into the

forum.

Additionally, the mere fact that Filla may be personally liable under the securities laws,

does not automatically give the Court jurisdiction over him, absent a showing that he had the

requisite minimum contacts.  Sneberger, 1998 WL 826992 at *4 (stating that even though

defendants may be personally liable as employers under the Pennsylvania Wage Payment and

Collection Law, the plaintiff must still show that defendants have the requisite minimum

contacts).  It is established that,

> if [a] corporate officer is charged with violating a statutory scheme that provides for
> personal, as well as corporate liability, courts have held that contacts with the forum
> stemming from corporate actions should be considered when evaluating whether the
> officer, as an individual, has minimum contacts with the forum which would support
> the assertion of personal jurisdiction.

Nat'l Precast Crypt Co. v. Dy-Core of Pa., Inc., 785 F. Supp. 1186, 1191 (W.D. Pa. 1992).  This does not provide for automatic jurisdiction over the corporate officer in his individual capacity as Plaintiffs suggest.  Instead, it requires the Court to consider the contacts made in the officer's corporate capacity, to determine if they rise to the requisite, minimum level.  In considering Filla's contacts in both his personal and corporate capacity, we find that Plaintiffs have not established, with reasonable particularity, sufficient contacts between Defendant Filla and Pennsylvania, that would allow the Court to exercise jurisdiction over him.

**B.  Sufficiency of the Pleadings Against InSequence**

Defendant InSequence argues in its motion to dismiss, that Plaintiffs failed to plead sufficient facts to give rise to an agency relationship and alter ego liability.  InSequence first asserts that Plaintiffs did not plead an agency relationship between Victor and Jeffrey DeAnthony and InSequence; therefore, the DeAnthonys' alleged tortious conduct cannot be imputed to InSequence.  In response, Plaintiffs argue that Jeffrey and Victor DeAnthony were agents of InSequence because they were employed by InSequence during the time of the alleged fraud.  Plaintiffs also assert that additional discovery is needed to prove or disprove alter ego liability.

We first consider whether the acts of Victor and Jeffrey DeAnthony can be imputed to InSequence.  The parties seem to agree that Pennsylvania law applies to the issue of imputation.  Under Pennsylvania law,

> [T]he fraud of an officer of a corporation is imputed to the corporation when the officer's fraudulent contact was (1) in the course of his employment, and (2) for the benefit of the corporation.  This is true even if the officer's conduct was unauthorized, effected for his own benefit but clothed with apparent authority of the corporation, or contrary to instructions.  The underlying reason is that a corporation can speak and act only through its agents and so must be accountable for any acts

14

committed by one of its agents within his actual or apparent scope of authority and while transacting corporate business.

Belmont v. MB Inv. v. Partners, Inc., 708 F.3d 470, 494 (3d Cir. 2013) (quoting In re Pers. & Bus. Ins. Agency, 334 F.3d 239, 242-42 (3d Cir. 2003) (internal quotation marks omitted)). "This rule of liability is not based on any presumed authority in the agent to do the acts, but on the ground of public policy . . . that the principal who has placed the agent in the position of trust and confidence should suffer, rather than an innocent stranger." Id. at 495 (quoting Aiello v. Ed Saxe Real Estate, Inc., 499 A.2d 282, 285 (Pa. 1985)).

Plaintiffs alleged that Defendants Victor and Jeffrey DeAnthony were or are employees, agents, representatives, or principals of InSequence. We note that while legal conclusions, such as an agency relationship, "can provide the framework of a complaint, they must be supported by factual allegations." Carrier v. Bank of America, N.A., 2014 WL 356219, *7 (D. NJ Jan. 31, 2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). At the time of the alleged fraud, Victor DeAnthony served as the president and chief executive officer of MID, while also serving as the systems engineer and executive director at InSequence. Also at the time of the alleged fraud, Jeffrey DeAnthony served as the chief marketing officer of MID and as the director of business development at InSequence. Additionally, InSequence is MID's dominant and controlling shareholder.

InSequence and MID have the same registered office in Herndon, Virginia. During initial conversations with Ms. Leever, Jeffrey and Victor DeAnthony described MID as a subsidiary, affiliate and/or sister company of InSequence. Jeffrey and Victor DeAnthony directed Ms. Leever to InSequence's website to review descriptions of services, technology, clients, and the

success of InSequence.  The presence and in-depth involvement of InSequence contributed to

Ms. Leever's belief that MID was a safe investment.  Beginning in late 2010, Jeffrey and Victor

DeAnthony declared to Ms. Leever and Mr. Semon during a series of phone conversations, that

InSequence was guaranteeing the success and profitability of MID.  (Id. at ¶ 25.)  Additionally,

Jeffrey DeAnthony operated out of an InSequence office in Forty Fort, Pennsylvania, when he

was seeking investors for MID.  Also during this time, Jeffrey and Victor DeAnthony were

compensated by InSequence, and their actions benefitted InSequence by obtaining investment

capital.

"Imputation to an employer is proper based on 'acts committed by one of its agents

within his actual or apparent authority.'" Belmont, 708 F.3d at 496 (quoting In re Pers. & Bus.

Ins. Agency, 334 F.3d at 243).  In this case, we find that Plaintiffs have pleaded enough factual

allegations of an agency relationship at this stage of the litigation.

We next consider InSequence's argument that Plaintiffs failed to sufficiently plead that

MID is the alter ego of InSequence.  InSequence argues that Virginia law applies to this point

and that various factors that point to alter ego liability have not been met.  Plaintiffs respond by

generally disputing that Virginia law applies, and stating that discovery is needed to prove or

disprove alter ego liability.  Plaintiffs do not direct us to any case law supporting their argument

that Virginia law does not apply, but we agree with Plaintiffs that the factors considered by

Pennsylvania and Virginia courts are similar.  Compare C.F. Trust Inc. v. First Flight Ltd. P'ship,

140 F. Supp. 2d 628 (E.D. Va. 2001), with Allen v. Chi. Steel, Civ. No. 10-1931, 2010 WL

2991214, *8 (E.D. Pa. July 27, 2010).

InSequence directs our attention to C.F. Trust, Inc. v. First Flight Limited Partnership,

which is a reverse piercing of the corporate veil case.  In it, the court discusses the Supreme

Court of Virginia's decisions involving piercing the corporate veil.  Virginia law requires a "fact-

specific inquiry into the circumstances surrounding the corporation, the related parties, and the

acts in question." C.F. Trust, 140 F. Supp. 2d at 643 (quoting C.F. Trust v. First Flight Ltd.

P'ship, 111 F. Supp. 2d 734, 741 (E.D. Va. 2000)).  The Supreme Court of Virginia stated that

"piercing the corporate veil is justified only under exceptional circumstances, which occur (i)

when the 'unity of interest and ownership is such that the separate personalities of the

corporation and the individual no longer exist and to adhere to that separateness would work an

injustice,' and (ii) when the shareholder has 'used the corporation to evade a personal obligation,

to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage . . .'" Id.

(quoting O'Hazza v. Exec. Credit Corp., 246 Va. 111, 115 (1993)).  The Supreme Court of

Virginia also set forth factors that, when viewed in the totality of the circumstances, would

suggest a unity of interest and ownership.  These factors include: "(i) whether personal and

business assets were commingled, (ii) whether the individual 'siphoned [business] assets into

their own pockets,' (iii) whether the business entity was undercapitalized, or (iv) whether

business formalities were observed." Id. (quoting Cheatle v. Rudd's Swimming Pool Supply

Co., Inc., 234 Va. 207, 212 (1987)).

    We find that at this stage of the litigation, taking Plaintiffs' allegations as true, Plaintiffs

have alleged sufficient facts to give rise to alter ego liability.  It is alleged that InSequence is

MID's dominant and controlling shareholder, and at the times relevant to the instant action,

Jeffrey DeAnthony was employed as director of business development at InSequence, and Victor

DeAnthony was employed as a principal systems engineer and/or executive director at

InSequence.  Plaintiffs further alleged that based on at least one financial statement that

Plaintiffs obtained, Defendants misappropriated Plaintiffs' money by using their investments for

personal use.  Additionally, Plaintiffs alleged that MID was grossly undercapitalized, and that

Jeffrey and Victor DeAnthony disregarded any formalities distinguishing MID from InSequence,

as they sold shares of MID under InSequence's name.  It was also alleged that Jeffrey DeAnthony

operated out of the InSequence office in Forty Fort, Pennsylvania between 2010 and 2013.  We

find that Plaintiffs have raised sufficient facts to survive a motion to dismiss on an alter ego

theory of liability.

## C.  Sufficiency of the Pleadings Against Jeffrey DeAnthony

Jeffrey DeAnthony asserts that under Virginia law, Plaintiffs may not pierce MID's

corporate veil and hold him liable.  Plaintiffs respond by arguing that Jeffrey DeAnthony can be

held liable, because he personally committed the fraud.  Plaintiffs do not dispute that Virginia

law applies, but Plaintiffs provide an analysis under Third Circuit case law.

Upon consideration of the factors previously discussed from C.F. Trust, Inc., we find that

Jeffrey DeAnthony may be held liable.  At the time of the alleged fraud, Jeffrey DeAnthony was

the Marketing Officer at MID and a business developer at InSequence.  Plaintiffs alleged that

personal and business assets were commingled, as it is alleged that the investments given by

Plaintiffs for MID were used for Jeffrey and Victor DeAnthony's personal use.  Additionally,

Plaintiffs alleged that MID was undercapitalized.  We find that Plaintiffs adequately pled a unity

of interest and ownership between Jeffrey DeAnthony and MID, and further that Jeffrey

DeAnthony used MID to perpetrate fraud.

18

**D.  Statute of Limitations Challenge**

Defendants all assert that Plaintiffs' claims are time-barred by the statute of limitations. Specfically, Defendants argue that Plaintiffs' securities fraud claims (Count I and III) are time-barred, because Ms. Leever's and Mr. Jacot's claims accrued no later than January 2011, and expired two years later, on January 2013, and that Mr. Semon's claim accrued no later than September 2011, and expired in September 2013.  Defendants argue that a reasonably diligent investor would have immediately discovered that MID was not receiving any congressional support, by calling their congressional representative or legislative committee, or searching for the relevant pending federal legislation.

Plaintiffs respond by arguing that they first became suspicious in November 2013 and that they discovered the fraud in February 2014.  Plaintiffs then filed the instant action in August 2014.  Plaintiffs also argue that they received assurances from the DeAnthonys before becoming suspicious and that "[r]eassurances can dissipate apparent storm warnings if an investor of ordinary intelligence would reasonably rely on them to allay the investor's concerns."  Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P., 435 F.3d 396, 401 n. 16 (3d Cir. 2006).  Plaintiffs allege that between January 2012 and January 2014, Defendants provided them with several, periodic and phony updates about the status of their investments and the profits and returns they should anticipate.

We agree with Plaintiffs that their claims are not time-barred.  The statute of limitations for a securities fraud claim is the earlier of "2 years after the discovery of the facts constituting the violation;" or "5 years after such violation."  28 U.S.C. § 1658(b).  The Supreme Court of the United States found that the limitations period in § 1658(b)(1) "does not begin to run until the

19

plaintiff . . . discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation,' including scienter – irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." Merck & Co., Inc. v. Reynolds, 559 U.S. 633, 653 (2010). Defendants provided Plaintiffs with assurances on their investments for two years, and it was not until November 2013, that Plaintiffs became suspicious and began requesting further statements and reports concerning the condition of MID. Plaintiffs then requested statements and reports, which the DeAnthonys failed to provide. In March 2014, Plaintiffs began to demand that Defendants return the money invested in MID, which Defendants refused to return. We find that prior to August 2012, Plaintiffs did not discover, and Defendants have not shown, that a reasonably diligent plaintiff would have discovered, the facts constituting the violation. We also find that Plaintiffs' other claims are also not time-barred.

**E. Securities Fraud Claims**

Plaintiffs allege claims under the Securities Exchange Act of 1934, 15 U.S.C. § 78a, and Rule 10b-5 (Count I), and under the Pennsylvania Securities Act, 70 P.S. § 1-101 (Count III). Defendants argue that these claims should be dismissed under Rule 12(b)(6). Specifically, Defendants all assert that Plaintiffs failed to meet the heightened pleading standard of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4. InSequence argues that Plaintiffs' theory of corporate scienter fails. Jeffrey DeAnthony argues that he is not an officer or owner of MID and did not share in profits or receive a commission. Jeffrey DeAnthony also argues that Plaintiffs failed to plead scienter or allege that he knew his statements were false. Victor DeAnthony and MID argue that Plaintiffs' claims are not set forth in detail as to each Defendant and that there are no allegations of scienter. Victor DeAnthony and MID also

generally assert that the investment was not a security or a "good," but they do not support this contention.

Section 10(b) of the Securities Exchange Act of 1934 prohibits a person "[t]o use or employ, in connection with the purchase or sale of any security . . ., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." Wharf (Holdings) Ltd. v. United Intern. Holdings, Inc., 532 U.S. 588, 592-93 (2001) (quoting 15 U.S.C. § 78j).  The SEC then promulgated Rule 10b-5, which makes it unlawful for "'any person, directly or indirectly, . . . [t]o make any untrue statement of material fact' in connection with the purchase or sale of securities." Janus Capital Grp, Inc. v. First Derivative Traders, 131 S. Ct. 2296, 2301 (2011) (quoting 17 CFR § 240.10b-5(b)).  "The elements of a private securities fraud claim based on violations of § 10(b) and Rule 10b-5 are: '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" Erica P. John Fund, Inc. v. Halliburton Co., 131 S. Ct. 2179, 2181 (2011) (quoting Matrixx Initiatives, Inc. v. Siracusano, 131 S. Ct. 1309, 1317 (2011)).

The threshold question for a securities fraud claim is whether Defendants' alleged misconduct involved a purchase or sale of securities.  MID and Victor DeAnthony very briefly stated that "the investment of the Plaintiffs was not a security and/or was not a 'good' capable of conferring standing" under the securities fraud statutes.  (Doc. 44, MID & VD Br., at 5.)  MID and Victor DeAnthony do not provide any further argument on this issue, let alone facts or supporting case law to support this contention.  Accordingly, we find that the alleged misconduct

involved a purchase or sale of securities.

We next examine the Second Amended Complaint to determine whether Plaintiffs pled facts in accordance with the PSLRA. To adequately state a securities fraud claim, Plaintiffs must meet the heightened pleading standard set forth in the PSLRA and Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiffs must include in the complaint "each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C.A. § 78u-4(b)(1). "This standard requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." City of Edinburgh Council v. Pfizer, Inc., 754 F.3d 159, 166 (3d Cir. 2014) (quoting Institutional Investors Grp. v. Avaya, Inc., 564 F.3d 242, 253 (3d Cir. 2009)).

Plaintiffs must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C.A. § 78u-4(b)(2)(A). Scienter is "a mental state embracing intent to deceive, manipulate or defraud." U.S. S.E.C. v. Infinity Grp. Co., 212 F.3d 180, 192 (3d Cir. 2000) (quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n. 12 (2000)). The Third Circuit has held that recklessness can satisfy the scienter requirement. Id. Recklessness includes:

> [H]ighly unreasonable (conduct), involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

Id. (quoting McLean v. Alexander, 599 F.2d 1190, 1197 (3d Cir. 1979)). "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least

as compelling as any opposing inference one could draw from the facts alleged." <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 324 (2007).

We agree with Plaintiffs that they adequately alleged false misrepresentations, that taken together and as true, create a strong inference of scienter on behalf of Victor DeAnthony and vicariously, to MID. As we have previously discussed, "the fraud of an officer of a corporation is imputed to the corporation when the officer's fraudulent conduct was (1) in the course of his employment, and (2) for the benefit of the corporation." <u>Belmont</u>, 708 F.3d at 494. Plaintiffs adequately alleged that Victor DeAnthony was acting in the course of his employment and for the benefit of MID when he sought investments from Plaintiffs. Additionally, we find that as president and CEO of MID, Victor DeAnthony's scienter is also imputed to MID. This meets the public policy behind the rule of imputation, "that the principal who has placed the agent in the position of trust and confidence should suffer, rather than an innocent stranger." <u>Id</u>. at 495.

We also agree with Plaintiffs that all of the alleged facts, taken together as true, create a strong inference of scienter by Jeffrey DeAnthony, that is at least as compelling as any opposing inference. At the time of the alleged fraud, Jeffrey DeAnthony was the Chief Marketing Agent at MID and the Director of Business Development at InSequence. Plaintiffs alleged that Jeffrey DeAnthony provided Ms. Leever and Mr. Semon with fraudulent estimations of MID's expected revenue and growth, and false assurances that included that the former Pennsylvania Governor Tom Ridge and Steve Case, a founder of American Online, were on MID's Board of Directors. Jeffrey DeAnthony also told Ms. Leever and Mr. Semon that pending federal legislation would soon make it mandatory for all states to use the services and patented technology of MID. Jeffrey DeAnthony's positions at MID and InSequence, taken in light of the alleged fraudulent

23

misrepresentations, create a strong inference of scienter.

As we previously found, Plaintiffs pled enough factual allegations of an agency relationship between InSequence and the DeAnthonys at this stage of the litigation, and we find that the alleged misrepresentations may be imputed to InSequence.  "Imputation to an employer is proper based on 'acts committed by one of its agents within his actual or apparent authority.'" Belmont, 708 F.3d at 496 (quoting In re Pers. & Bus. Ins. Agency, 334 F.3d at 243).  We also find that the strong inference of scienter previously found as to Victor and Jeffrey DeAnthony, is imputed to InSequence as well, since it was alleged that, at the time of the alleged fraud, Jeffrey DeAnthony was employed as the director of business development at InSequence and Victor DeAnthony was a systems engineer and/or executive director at InSequence.

Therefore, we find that Plaintiffs properly pled a cause of action under Section 10(b) of the Securities Act and Rule 10b-5.  We also find that Plaintiffs properly pled a cause of action under the Pennsylvania Securities Act as "Section 401 . . . is modeled after Rule 10b-5 of the federal securities laws, and requires virtually the same elements of proof." Rosen v. Commc'n Services Grp, Inc., 155 F. Supp. 2d 310, 320 n.14 (E.D. Pa. 2001) (citing Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc., 40 F. Supp. 2d 644, 659 (W.D. Pa. 1999)).

## F.  Control Person Liability

InSequence next argues that Plaintiffs failed to allege a control person liability claim under Section 20(a) of the Securities Exchange Act of 1934.  InSequence argues that Plaintiffs did not plead that InSequence culpably participated in the alleged wrong, as required to state a control person liability claim.  Plaintiffs respond by arguing that control person liability is a question of fact that cannot be decided at this stage.

In <u>Rochez Brothers., Inc. v. Rhoades</u>, 527 F.2d 880 (3d Cir. 1975), the Court of Appeals for the Third Circuit held that "secondary liability cannot be found under Section 20(a) unless it can be shown that the defendant was a culpable participant in the fraud." <u>Rochez Bros.</u>, 527 F.2d at 890. Plaintiffs rely on a theory of inaction. "To impose secondary liability on a controlling person for his inaction, the plaintiff must prove that the inaction 'was deliberate and done intentionally to further the fraud.'" <u>Belmont</u>, 708 F.3d at 485 (quoting <u>Sharp v. Coopers & Lybrand</u>, 649 F.2d 175, 185 (3d Cir. 1981)). A Section 20(a) claim based on inaction "fails if the controlling person 'had no knowledge of [the controlled person's] fraudulent acts and did not consciously intend to aid' the controlled person." <u>Id.</u> (quoting <u>Rochez Bros.</u>, 527 F.2d at 890).

In the Second Amended Complaint, Plaintiffs alleged that InSequence knew or was reckless in not knowing that MID, Jeffrey DeAnthony, and Victor DeAnthony were involved in fraudulent conduct. Taking the allegations in the Second Amended Complaint as true, we find that Plaintiffs have pled a claim of control person liability and that they have raised a "reasonable expectation that discovery will reveal evidence of the necessary element[s]." <u>Nami</u>, 82 F.3d at 65.

## G.  Unfair Trade Practices and Consumer Protection Law Claim

Defendants all challenge Plaintiffs' standing to bring a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Defendants argue that an investment in securities is not a "good," and distinguish <u>Belmont</u> from the instant case because Defendants are not investment advisors. MID and Victor DeAnthony also argue that Plaintiffs are not consumers and the contract was not for personal considerations. Plaintiffs respond by arguing that the case is analogous to <u>Belmont</u> and that the catch-all provision of the UTPCPL

25

applies.

The UTPCPL "is designed to protect the public from fraud and deceptive business practices." Belmont, 708 F.3d at 497 (quoting Gardner v. State Farm Fire & Cas. Co., 544 F.3d 553, 564 (3d Cir. 2008)).  The statute provides standing to

> [a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater.

73 Pa. Stat. § 201-9.2(a).  "Whether a purchase is for personal, family or household purposes depends on the 'purpose of the purchase, not the type of product purchased.'" Hagerman v. Anadarko E & P Co., LP, Civ. Action No. 3:CV-12-0919, 2012 WL 6138479, *4 (M.D. Pa. Nov. 15, 2012) (Report and Recommendation adopted by 2012 WL 6138482 (M.D. Pa. Dec. 11, 2012)) (quoting Novinger Grp. Inc. v. Hartford Ins., Inc., 514 F. Supp. 2d 662, 670 (M.D. Pa. 2007)).

We agree with MID and Victor DeAnthony and find that Plaintiffs failed to allege that they purchased goods or services for "personal, family or household purchases."  Accordingly, Plaintiffs lack standing under the UTPCPL.

We also find that even if Plaintiffs purchased goods or services for "personal, family or household purposes," Plaintiffs would still not have an actionable claim under the UTPCPL. A security is not a "good," but the service involving securities can be actionable under the UTPCPL.  We agree with Defendants that Belmont is distinguishable from the present case.  In Belmont, the Court of Appeals for the Third Circuit remanded a claim against a registered investment advisor, under the catch-all provision of the UTPCPL.  In Algrant, the Third Circuit

26

found that a security is not a "good," and discussed case law that held that the UTPCPL covered the transaction of purchasing securities, and not with the securities themselves. See Algrant v. Evergreen Valley Nurseries Ltd. P'ship, 126 F.3d 178, 187 (3d Cir. 1997) (discussing S. Kane & Son Profit Sharing Trust v. Marine Midland Bank, No. CIV. A. 95-7058, 1996 WL 200603, at *3 (E.D. Pa. Apr. 25, 1996), Advest, Inc. v. Kirschner, Civ. A. No. 92-6656, 1994 WL 18592, *2 (E.D. Pa. Jan. 21, 1994)); see also Bruni v. Oceanview Electronics, Inc., et al., Civil Action No. 11-2017, 2012 WL 3021086, *1 (E.D. Pa. July 23, 2012) (finding that since defendants were not alleged to be brokers, defendants cannot be said to have provided "services").

Therefore, we find that Plaintiffs do not have standing to bring a cause of action under the UTPCPL.  Count IV of the Second Amended Complaint will be dismissed.

## H.  Breach of Fiduciary Duties

We next consider Defendants' arguments that Plaintiffs failed to state a claim for breach of fiduciary duties under Count V of the Second Amended Complaint.  Defendants argue that Plaintiffs do not have standing to bring a direct claim, as the claim may only be brought as a derivative action against MID.  Plaintiffs do not respond to this argument and effectively concede this point.  Therefore, we will dismiss Count V of the Second Amended Complaint.

## I.  Counts VI-VIII

After consideration of Defendants' and Plaintiffs' briefs, we find that Plaintiffs have adequately pled claims of fraudulent inducement, conspiracy to commit fraudulent inducement, and unjust enrichment.  Therefore, we will not dismiss these claims.

## V. CONCLUSION

For the reasons set forth above, the Court will grant Defendant Filla's motion to dismiss for lack of jurisdiction.  The Court will grant in part and deny in part, the remaining Defendants' motions to dismiss.  The Court will grant the remaining Defendants' motions as to Count V of the Second Amended Complaint.  The Court will deny the remaining Defendants' motions as to all other counts.  An appropriate order will follow.